IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DAVID PAUL BARD, | CASE NO. 5:23-cv-202 |
| Petitioner, | DISTRICT JUDGE JAMES G. CARR |
| vs. | |
| WARDEN ANTHONY DAVIS, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | |
| | **REPORT & RECOMMENDATION** |

Pro se Petitioner David Paul Bard filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Bard was in custody at the Trumbull Correctional Institution[1] due to a journal entry of sentence in the case *State v. Bard*, Stark County Court of Common Pleas, Case No. 2019CR00638(A). The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be dismissed.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that

---

[1]     Bard has since been released and is on post-release control. *See* Doc. 5; Doc. 8, at 1. His habeas petition is still viable. *See Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998).

presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Fifth Appellate District summarized the facts underlying Bard's conviction as follows:

> {¶2} On April 22, 2019, Appellant was indicted on one count of Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(1), a felony in the second degree. This charge stemmed from an incident which occurred in March of 2019.
>
> {¶3} On March 22, 2019, Appellant was arrested after a controlled buy of drugs took place. Confidential informant, Jimmy Ludt, was cooperating with the Alliance Police. The intended target of the buy, Aaron Studebaker, did not attend the buy as agreed. Instead, Appellant came with three and a half ounces of crystal methamphetamine to complete the sale.
>
> {¶4} Bard arrived on scene with two other people, went into Wal-Mart, and then exited after making a purchase. Within sight of surveillance, Ludt got out of his car and walked to the passenger side of Appellant's car, handing Appellant $1,000 in marked bills and taking the meth from Appellant. Ludt then returned to his car, and the police arrested Appellant before he could depart.
>
> {¶5} Ludt was arrested on other matters and jailed next to Appellant. Ludt then claimed he only threw the marked bills into the car and grabbed the drugs, eliminating Appellant as the seller.
>
> {¶6} On October 29, 2019, the jury returned a guilty verdict on the sole count of Aggravated Trafficking in Drugs, and found the quantity involved was over five times the bulk amount, but less than fifty times the bulk amount for methamphetamine.

{¶7} On November 4, 2019, the trial court sentenced
Appellant to a four-to-six year prison term.

*State v. Bard*, No. 2019 CA 00184, 2021 WL 942856, at *1 (Ohio Ct. App. March

12, 2021).

### Procedural background

*Direct appeal*

Bard, through new counsel, appealed to the Ohio court of appeals. Doc.

8-1, at 12–13 (Exhibit 5). In his brief, he raised the following assignments of

error:[2]

> 1. The State committed prosecutorial misconduct
> when it repeatedly defied the trial court's
> prohibition against mentioning the severity level of
> the charge, and it argued in closing that Appellant
> had committed a crime other than the charge
> presented at trial.
>
> 2. Appellant was denied effective assistance of
> counsel in violation of his rights under the Sixth and
> Fourteenth Amendments of the United States
> Constitution and Article I, Section 10, of the Ohio
> Constitution when trial counsel failed to strike a
> biased juror.

Doc. 8-1, at 14–44 (Exhibit 6). On March 12, 2021, the Ohio court of appeals

affirmed the trial court's judgment. *Id*. at 70–79 (Exhibit 8).

On September 10, 2021, Bard pro se filed an untimely notice of appeal

in the Ohio Supreme Court. Doc. 8-1, at 80 (Exhibit 9). In his motion for

---

[2]     Bard's claims are reproduced as written. In this report and
recommendation, all of the citations to the docket refer to the ECF document
and page number shown at the top of the page.

3

delayed appeal, Bard asserted that counsel failed to timely inform him of the Ohio court of appeals' decision and that he couldn't timely file his appeal because of Covid-19 restrictions at the prison. *Id.* at 84–85 (Exhibit 10). The court granted Bard's motion for delayed appeal. *Id.* at 98 (Exhibit 11). In his memorandum in support of jurisdiction, Bard set forth the following propositions of law:

> 1. Repeated defiance of the trial courts order to not mention the severity level of the offence is prosecutorial misconduct and contempt ultimately denying David Bard a fair trial and also undermines the confidence and reliability of the verdict.

> 2. Arguing in closing that Appellant had committed a crime other than the one presented to the jury and admittance of evidence that had nothing to do with the crime for which the Appellant was on trial for, clearly designed to shift the focus from the facts and evidence to emotion undermines the confidence and reliability in the verdict.

> 3. Appellant was denied effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when appellant counsel failed to address evidentiary issues in the appeal and correct misstatements and misidentifications of fact made by the prosecutor to the appeals court.

> 4. Convictions which are not supported by sufficient evidence, or are against the manifest weight of the evidence, lessen the States burden of proof and thereby deny a defendant the due process guarentee of conviction only upon evidence of guilt beyond a reasonable doubt.

Doc. 8-1, at 100–01 (Exhibit 12). On December 28, 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Bard's appeal. *Id*. at 126 (Exhibit 13).

*Motion for new trial*

Meanwhile, on April 2, 2020, Bard pro se filed in the trial court a motion for new trial. Doc. 8-1, at 127 (Exhibit 14). Bard alleged prosecutorial misconduct and argued that the chain of custody was not properly maintained for certain evidence. *Id*. at 127–28. He also claimed to have newly discovered evidence which would call into question the case against him. *Id*. at 129. On May 15, the trial court denied Bard's motion for lack of jurisdiction, explaining that Bard's case was then-pending on appeal in the Ohio court of appeals. *Id*. at 160 (Exhibit 15).

*State post-conviction petition*

In December 2020, Bard pro se filed in the trial court a timely petition to vacate or set aside judgment of conviction or sentence. Doc. 8-1, at 161 (Exhibit 16). He raised the following assignments of error:

> 1. Through Prosecutorial Misconduct the Petitioner was denied his right to the Due Process of Law under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution when the State failed to disclose important information about their "confidential informant" James William Ludt not only to the defense, but also to the Court, that was not known until after trial and the record closed.
>
> 2. Through Prosecutorial Misconduct the Petitioner was denied his right to the Due Process of Law under

the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution when the State of Ohio was said to have "bagged and tagged" materially exculpatory items into evidence that since the trial have been found to not have been preserved properly, some not at all, and others missing altogether hence: the reason they were unavailable for the defense at trial.

3. Petitioner was denied his right under the Fourth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution of freedom from unlawful search and seizure when the State of Ohio misrepresented their cooperating individual as a lawful "confidential informant" to establish his reliability and creditability in the finding of probable cause to conduct a search, and arrest petitioner while on private property, as well as to commence prosecution when the magistrate bound the case over to the grand jury for indictment based off of perjury, and fraudulent misidentification of this individual.

4. Through Ineffective assistance of retained Trial Counsel Petitioner was denied his right to Effective Assistance of Counsel under the Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution when retained trial Counsel failed to do specific duties that were requested and initiated by the Petitioner himself, as well as neglected to perform duties that were required/obligated of him as defense counsel before and during trial.

*Id.* at 162–63. The State filed a motion to dismiss Bard's petition and moved for summary judgment, *id.* at 202, (Exhibit 17), and Bard filed a reply and moved for summary judgment, *id.* at 210 (Exhibit 18). On February 8, 2022, the trial court denied and dismissed Bard's petition and motion for summary judgment on the basis that it was barred by res judicata. *Id.* at 242–47 (Exhibit

6

19). The court also explained that Bard had not supported his petition with "evidentiary quality materials." *Id*. at 246–47. Bard did not appeal.

*Federal habeas corpus petition*

Bard states that on January 13, 2022, he placed in the prison mailbox his federal habeas corpus petition under 28 U.S.C. § 2254.[3] Doc. 1, at 55. He raised the following grounds for relief:

> **Ground one**: Petitioner was denied the Due Process of Law guaranteed to him under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution when Detective Rajcan of the Alliance Police Dept. had given perjured testimony to the Alliance Municipal Court Magistrate on or April 01, 2019 (the preliminary hearing) misidentifying and misrepresenting Mr. Ludt as a legal "confidential informant in order to establish probable cause and have the case bound over to the grand jury which resulted in an illegal indictment being issued.
>
> **Ground two**: Petitioner was denied the Due Process of Law guaranteed to him under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution when the prosecution failed to disclose information about their "informant" to the defense and the court in violation of the "BRADY RULE."
>
> **Ground three**: Petitioner was denied the Due Process of Law guaranteed to him under the Fifth and Fourteenth, U.S. Constitution; Section 16, Article I, Ohio Constitution when Detective Rajcan of the Alliance Police Dept. had given perjured testimony to the Alliance Municipal Court on or about April 01, 219 (The preliminary hearing) testifying that he had seen something (that the same

---

[3]     A petition is deemed filed when a petitioner places it the prison mailing system. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

detective later admitted he did not see) in order to establish probable cause and have the case bound over to the grand jury which resulted in establish probable cause and have the case bound over to the grand jury which resulted in an illegal indict being issued.

**Ground four**: The petitioner was denied the Due Process of Law guaranteed to him under the Fifth and Fourteenth Amendments, U.S. Constitution when Detective Rajcan Detective for Alliance Police Dept. testified in the preliminary hearing that he "bagged and tagged" physical exculpatory evidence that after trial had been found to be a complete lie.

**Ground five**: Through Ineffective assistance of retained Trial Counsel Petitioner was denied his right to Effective Assistance of Counsel under the Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution when trial counsel failed to object to the admittance of spoiled/altered evidence.

**Ground six**: Through Ineffective Assistance of Trial Counsel Petitioner was denied his right to Effective Assistance of Counsel under the Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution when Trial Counsel made a clearly improper comment during opening statements.

**Ground seven**: Through Ineffective assistance of retained Trial Counsel Petitioner was denied his right to Effective Assistance of Counsel under the Sixth Amendment, U.S. Constitution; Section 10, Article Ohio Constitution when retained Trial Counsel failed to do specific duties that were requested and initiated by the Petitioner himself, as well as neglected to perform duties that were required/obligated of him as defense counsel before and during trial.

**Ground eight**: The State committed Prosecutorial Misconduct when it repeatedly defied the Trial Courts prohibition against mentioning the severity

level of the charge, in violation of the Due Process of Law guaranteed to him under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution.

**Ground nine**: The State of Ohio committed Prosecutorial Misconduct when it argued in closing that Appellant had committed a crime other than the charge presented at trial in violation of the Due Process of Law guaranteed to him under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution.

**Ground ten**: Appellant was denied Effective Assistance of Counsel in violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when trial counsel failed to strike a biased juror.

**Ground eleven**: Through Ineffective Assistance of Appellant Counsel Petitioner was denied his right to Effective Assistance of Counsel under the Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution when Appellate Counsel failed to include in petitioner's appeal brief a claim of Ineffective Assistance of Trial Counsel for his improper comment during opening statements.

**Ground twelve**: Petitioner was denied effective assistance of counsel guaranteed to him under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I section 10 of the Ohio constitution and Due Process of Law guaranteed to him under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution when the appellate counsel refused to address and correct the continued misstatements of facts made by the prosecutor to the appeals court.

**Ground thirteen**: The State of Ohio committed Prosecutorial Misconduct when it made false misstatements of pertinent facts in their brief in violation of the Due Process of Law guaranteed to

9

him under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution.

**Ground fourteen**: Petitioner was denied the Effective Assistance of Counsel guaranteed to him under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I section 10 of the Ohio Constitution when Appellate Counsel failed to include the issue of Sufficiency of the Evidence within the Brief.

**Ground fifteen**: Petitioner was denied Effective Assistance of Counsel guaranteed to him under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I section 10 of the Ohio constitution when the Appellate Counsel refused to address the perjured testimony of the detective with regards to the evidentiary issues and the testimony given in the preliminary hearing raised in grounds ONE, TWO, THREE, and FOUR.

**Ground sixteen**: Petitioner was denied the Due Process of Law guaranteed to him under the Fifth and Fourteenth Amendments, U.S. Constitution; Section 16, Article I, Ohio Constitution, and access to the courts when counsel refused to make a copy of the transcripts for the purposes of filing a 26(B) motion to address the issues he refused to address in the direct appeal ultimately restricting the petitioners access to the courts.

**Ground seventeen**: Accumulative Error.

Doc. 1, at 11–48. The Warden filed a Return of Writ. Doc. 8. Bard has not filed a Traverse and the time to do so has passed.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural

requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the

11

state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the

12

petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish

13

one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

14

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*Ground one is procedurally defaulted*

In ground one, Bard argues that his due process rights were violated when Detective Rajcan gave perjured testimony at a hearing in the Alliance Municipal Court. Doc. 1, at 11–12. At the hearing, Bard alleges, Rajcan said that Ludt was a "confidential informant," but Bard submits that after trial it was revealed that Ludt was not a confidential informant. *Id*. at 12. In fact, Bard alleges, Ludt was on "Intense Supervised Probation," which prevented him from working as an informant, and "barred him from participating in such activity altogether." *Id*.

Bard procedurally defaulted ground one in two ways, described below.

*Bard's claim is barred by res judicata*

Bard raised this claim in his post-conviction petition. Doc. 8-1, at 185–89. The trial court denied Bard's petition on the basis of res judicata, explaining that Bard's claims could have been, but were not, raised on direct appeal. *Id*. at 245–46; *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)). The Sixth Circuit "has held that this

16

rule is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test." *Id*. Bard concedes that at trial Detective Rajcan testified that Ludt was not enrolled as a "confidential informant" with the Alliance Police Department. Doc. 1, at 12; *see also* Doc. 8-1, at 20 (Bard's appeal to the Ohio court of appeals stating that Rajcan testified at trial that Ludt wasn't a confidential informant, but that Rajcan and another detective received permission from a lieutenant to use Ludt for a "'buy/bust' operation"); Doc. 9-1, at 259–62 (trial transcript). So Bard could have raised this issue on direct review.

To the extent that Bard alleges that the trial court improperly dismissed his post-conviction petition without holding an evidentiary hearing, Doc. 1-1, at 24, such a claim is not cognizable, *see Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009) (claim that the state court in a post-conviction proceeding improperly denied the petitioner an evidentiary hearing is not cognizable in habeas corpus proceedings); *see Webster v. Horton*, 795 F. App'x 322, 328 (6th Cir. 2019) (petitioner's claim that the trial court erred in denying his post-conviction motion without an evidentiary hearing is "outside the scope of federal habeas corpus review" and not cognizable) (quoting *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007)).

For cause to excuse his procedural default, Bard argues that appellate counsel was ineffective for failing to raise this claim on direct appeal. Doc. 1-1, at 13. But Bard never filed an Ohio Appellate Rule 26(B) application to reopen

17

alleging ineffective assistance of appellate counsel.[4] So any ineffective-assistance-of-appellate-counsel claim is itself procedurally defaulted and cannot serve as cause to excuse the procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000).

Moreover, Bard hasn't shown cause to excuse the procedural default of any related ineffective-assistance-of-appellate-counsel claim. *See Edwards*, 529 U.S. at 453. He argues that he didn't file a Rule 26(B) application because he didn't have a copy of his transcripts. Doc. 1, at 13, 51. But Rule 26(B) doesn't require the applicant to file transcripts. *See* Ohio App. R. 26(B)(e) (an application must contain "[a]ny parts of the record available to the applicant"); *State v. Marcum*, No. CA96-03-049, 2002 WL 42894, at *2 (Ohio Ct. App. Jan. 14, 2022) ("Nothing in the rule requires counsel to provide or make available a copy of the trial transcript to an applicant for purposes of preparing an App.R. 26(B) application."). And Bard hasn't shown good cause for filing a Rule 26(B) application now, more than three years after it would have been due. *See, e.g., Prieto v. Schweitzer*, No. 4:18-cv-222, 2019 WL 2605639, at *8, n.5 (N.D. Ohio May 31, 2019) (the petitioner's failure to file an Ohio Appellate Rule 26(B) application to reopen or provide sufficient reasons why he had not filed one procedurally defaulted any ineffective-assistance-of-appellate-counsel claims),

---

[4]     A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1). An application must be filed "within ninety days from journalization of the appellate judgment [on direct appeal] unless the applicant shows good cause for filing at a later time." *Id*.

*report and recommendation adopted*, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021); *Rice v. Welch*, No. 3:10-cv-1916, 2014 WL 4794585, at *26 (N.D. Ohio Sept. 23, 2014).

### Bard failed to appeal the trial court's decision

Bard also procedurally defaulted ground one because he didn't appeal the trial court's order denying his post-conviction petition. *See Williams*, 460 F.3d at 806 (a petitioner must raise a claim in state court "and pursue that claim through the state's 'ordinary appellate review procedures'").

For cause to excuse this procedural default, Bard says that it would have been futile to appeal because the state courts would have affirmed the trial court's res judicata ruling. Doc. 1, at 12–13. But "perceived futility" cannot constitute cause to excuse a procedural default. *See Cvijetinovic v. Eberlin*, 617 F.3d 833, 839 (6th Cir. 2010) (citing, among other cases, *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see Gatewood v. United States*, 979 F.3d 391, 397 (6th Cir. 2020) (a claim "foreclosed by Supreme Court precedent at the time of default qualifies as actually futile, whereas a claim foreclosed merely by state or lower court precedent does not.").

Bard also argues that he didn't appeal because the clerk of courts didn't serve him with the trial court's February 1, 2022 decision until April 19, 2022. Doc. 1, at 49. And, Bard alleges, because of the prison's new mail policy, he didn't receive the court's order until May 17, 2022. *Id*. at 49–50. Bard submits that because of these delays, he didn't appeal because his appeal would have

been denied as untimely. *Id*. But under Ohio Appellate Rule 4(A)(3), the 30-day appeal time doesn't begin to run until the clerk "actually completes service." *See State v. Jordan*, 221 N.E.3d 254, 257 (Ohio Ct. App. 2023). So Bard's appeal time would have started to run on April 19. As for Bard's claim that he didn't timely receive the court's order because of the prison's new legal mail policy, he provides no supporting evidence. The fact that Bard didn't even attempt to appeal may show that he thought that an appeal would be futile, but that perceived futility is not cause to excuse a procedural default. *See Gatewood*, 979 F.3d at 397; *cf. Maples v. Stegall*, 340 F.3d 433, 439 (2003) (finding that the prison officials' delay in mailing the petitioner's papers that the state court rejected as untimely was cause to excuse a procedural default because it was an "'objective factor extern to the defense [that] impeded … efforts to comply with the State's procedural rule'") (quoting *Coleman*, 501 U.S. at 753).

Finally, Bard hasn't shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Bard

20

hasn't provided "new reliable evidence" showing that he is actually innocent, *see id*. For all of these reasons, ground one is procedurally defaulted.

> *Grounds two, three, four, and seven are procedurally defaulted*

Grounds two, three, four, and seven are all claims that Bard raised in his state post-conviction petition. In ground two, Bard argues that the prosecution failed to disclose information about Ludt to him and the court in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Doc. 1, at 15; Doc. 8-1, at 177–81 (post-conviction petition). In ground three, Bard alleges that his due process rights were violated when Detective Rajcan falsely testified at a preliminary hearing in April 2019 about what he saw in order to establish probable cause for a grand jury to indict Bard. Doc. 1, at 17; Doc. 8-1, at 179. In ground four, Bard alleges that Rajcan falsely testified at the preliminary hearing that a bottle of sea salt and Bard's store receipt from this purchase were properly "bagged and tagged." Doc. 1, at 20; Doc. 8-1, at 181. And ground seven is an ineffective-assistance-of-counsel claim for trial counsel's failure to raise various issues at trial. Doc. 1, at 29; Doc. 8-1, at 189–92.

All of these claims are procedurally defaulted for the same reasons that ground one is procedurally defaulted—Bard failed to raise them in his direct appeal, the trial court found that they were barred by res judicata, and Bard never appealed the trial court's decision denying him post-conviction relief.

21

*Grounds five, six, thirteen, and seventeen are procedurally defaulted*

Bard never raised in any court the claims in grounds five, six, thirteen, and seventeen. Ground five alleges that trial counsel was ineffective for not challenging the amount of drugs recovered.[5] Doc. 1, at 23. Ground six alleges that trial counsel was ineffective because he made an improper comment during opening statements. *Id.* at 26. Ground thirteen is a prosecutorial misconduct claim based on the claim that the State made "misstatements of pertinent facts" to the Ohio court of appeals in its brief on direct appeal.[6] *Id.* at 41. And ground seventeen is a claim of cumulative error. *Id.* at 48. Because Bard never raised them, these four grounds are procedurally defaulted. *See Fulcher*, 444 F.3d at 798 ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts."); *see Williams*, 460 F.3d at 806.

Bard hasn't shown cause to excuse his procedural default of these claims. In his discretionary appeal to the Ohio Supreme Court on direct review, Bard argued that appellate counsel was ineffective for failing to raise grounds

---

[5] To the extent it could be said that Bard raised this claim as part of claim four in his post-conviction petition, *see* Doc. 8-1, at 190–92, any such claim is procedurally defaulted for the same reason all of Bard's claims raised in his post-conviction petition are procedurally defaulted.

[6] In his appeal to the Ohio Supreme Court, Bard argued that appellate counsel was ineffective for failing to correct the State's "false and misleading statements" in its appellate brief. Doc. 8-1, at 114. But that claim is "analytically distinct" from the underlying prosecutorial misconduct claim that Bard raised in ground thirteen. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).

five and thirteen on direct appeal. Doc. 8-1, at 114–15. But "raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits." *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012). The Ohio Supreme Court rejected Bard's discretionary appeal, Doc. 8-1, at 126, so it didn't address Bard's ineffective-assistance-of-appellate-counsel claims on the merits. *See Goldberg*, 692 F.3d at 537 (when the Ohio Supreme Court "determines whether or not to accept jurisdiction in a particular case, it is not rendering a decision on the merits") (quoting *Ohio v. Davis*, 894 N.E.2d 1221, 1225 (Ohio 2008)). So any ineffective-assistance-of-appellate-counsel claim that Bard raised to the Ohio Supreme Court on direct appeal is itself procedurally defaulted and cannot serve as cause to excuse the procedural default of grounds five and thirteen. *See Edwards*, 529 U.S. at 453.

> *Grounds eleven, twelve, fourteen, fifteen, and sixteen are procedurally defaulted*

Grounds eleven, twelve, fourteen, fifteen, and sixteen are all ineffective-assistance-of-appellate-counsel claims and they are all procedurally defaulted because Bard didn't file a Rule 26(B) application to reopen, as explained above. In these claims Bard argues that appellate counsel was ineffective for failing to raise on appeal an ineffective-assistance-of-trial-counsel claim for a comment counsel made during opening statements (ground eleven), Doc. 1, at 36, and a sufficiency-of-the-evidence claim (ground fourteen), *id*. at 43. Bard

alleged that appellate counsel should have challenged the detective's testimony (ground fifteen), *id*. at 44, corrected the record on appeal (ground twelve), *id*. at 39, and provided Bard with trial transcripts (ground sixteen), *id*. at 46. As above, Bard hasn't shown cause to excuse his procedural default or actual innocence.

> *Grounds eight and nine are procedurally defaulted. To the extent that a portion of ground eight is not, it fails on the merits*

Grounds eight and nine are prosecutorial misconduct claims. Doc. 1, at 32. In ground eight, Bard alleges that the prosecutor repeatedly defied the trial court's prohibition against mentioning the severity of the charge against Bard. *Id*. In ground nine, Bard alleges that the prosecutor committed misconduct when he said during closing argument that Bard had committed a crime other than the crime charged—that Bard had "got to" the informant in prison and pressured the informant not to testify at trial. Doc. 1, at 33–34. The Ohio court of appeals considered these claims as follows:

> {¶11} In Appellant's First Assignment of Error, Appellant argues the prosecution's remarks regarding the level of the offense and the State arguing charges not presented at trial prejudiced Appellant's right to a fair trial. We disagree.
>
> {¶12} As Appellant did not lodge an objection to the error he currently raises, he has therefore waived all but plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). To prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been

24

different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶13} The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), *cert denied*, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Appellant of a fair trial based on the entire record. *Lott*, *supra*, 51 Ohio St.3d at 166, 555 N.E.2d 293.

{¶14} A prosecutor's remarks constitute misconduct if remarks were improper and if the remarks prejudicially affected an accused's substantial rights. *State v. Williams*, 99 Ohio St.3d 439, 793 N.E.2d 446, 2003-Ohio-4164. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the Appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). The analysis does not include the culpability of the prosecutor, but the fairness of the trial. *State v. Gapen*, 104 Ohio St.3d 358, 819 N.E.2d 1047, 2004-Ohio-6548. The record must be viewed in its entirety to determine whether the allegedly improper remarks were prejudicial. *State v. Treesh* (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.

{¶15} Appellant argues that statements made by the prosecutor during closing arguments and the testimony of Detective Rajcan referencing the level

of offense were improper.

{¶16} During Detective Rajcan's testimony describing why it mattered if the drugs were sold in a bulk amount, he mentioned the level of offense as being a felony two. The trial court immediately stopped the questioning and instructed the jury to disregard that statement.

{¶17} During the prosecutions closing arguments the prosecution recited the statute which made reference to the level of offense being a felony in the second degree. No objection was made at this point during closing arguments.

{¶18} Appellant also argues that the prosecutor's closing arguments contained allegations of other criminal misconduct not charged; Intimidation of attorney, victim or witness. During closing arguments the prosecution, summarizing testimony, noted Ludt, the confidential informant, was placed in jail right next to Appellant. The prosecution then asked the jury to use their common sense as to why Ludt changed his testimony, stating, "Ladies and gentlemen, use your reason and your common sense; it's clear to see he made a deal with Jimmy Ludt." Tr. II at 62.

{¶19} Upon review and with regard to the statements made in reference to Ludt changing his testimony, we find the State was merely asking the jury to evaluate the credibility of Ludt, consider all the testimony, and use their common sense.

{¶20} In the challenged references to the level of the offense, while the references to the level of the offense were improper, the judge properly instructed the jury to disregard during Detective Rajcan's testimony. Appellant has not shown that the references made during closing arguments, while improper, deprived Appellant of a fair trial based on the entire record.

{¶21} Moreover, Appellant has not demonstrated,

26

> even assuming arguendo the prosecutors conduct did deprive Appellant of a fair trial, that "but for" these isolated statements, he would not have been convicted of the crimes.
>
> {¶22} We find Appellant was not denied a fair trial due to prosecutorial misconduct.

*Bard*, 2021 WL 942856, at *1–3.

Because the Ohio court of appeals applied plain error review to Bard's claims, the claims are procedurally defaulted. Ohio's long-standing contemporaneous objection rule requires a party to make a contemporaneous objection to an alleged trial error to preserve the error for appellate review. *See, e.g., State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001). When an Ohio court applies plain error review, it enforces an independent and adequate state ground that precludes federal habeas review. *Scott v. Mitchell*, 209 F.3d 854, 866–71 (6th Cir. 2000). And the state court's plain error review "does not constitute a waiver of the state's procedural default rules and resurrect the issue." *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)). Bard hasn't shown that he can overcome the procedural default of these claims.

In his eighth ground, Bard argues that his counsel objected at trial to the prosecutor eliciting a comment about the level of the offence. Doc. 1-1, at 39, 44. It is true that counsel objected, once, when the prosecutor questioned Detective Rajcan. Doc. 9-1, at 284. When asked why he didn't "make a deal" with Bard, Rajcan testified that Bard had brought a large amount of crystal

meth to the community to sell and referenced that the amount of drugs Bard sold indicated a level-two felony. *Id.* The trial court stopped Rajcan, Bard's counsel objected, and the trial court told the jury to disregard Rajcan's "last statement." *Id.* at 285. Later, the prosecutor asked Rajcan "on what charges" he booked Bard into the county jail and Rajcan answered, "aggravated trafficking in drugs, felony two." *Id.* at 286. The court again interrupted the testimony and told the jury to "disregard reference to any level of offence." *Id.* at 287. Counsel did not object. And counsel didn't object at closing argument, when the prosecutor mentioned the felony level, *id.* at 378, or at any other time evidence about the felony level may have been mentioned.[7] So the only time Bard's counsel objected was when Rajcan first referenced a level-two felony.[8]

Assuming this portion of ground eight is not defaulted, as is the case with the balance of the claims in ground eight, a federal habeas court reviews de novo an exhausted federal claim when the state court misapplied a procedural bar and did not review the claim on the merits. *Mack v. Bradshaw*, No. 1:04-cv-829, 2021 WL 4477882, at *18 (N.D. Ohio Sept. 30, 2021) (citing *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005)), *aff'd*, 88 F.4th 1147 (6th

---

[7]     The felony level was apparently mentioned in recordings that the State played at trial for the jury, but the court redacted this information from the tapes when they were admitted into evidence. *See* Doc. 9-1, at 348–50.

[8]     On appeal, Bard's counsel asserted that trial counsel didn't object and that plain error therefore applied to Bard's prosecutorial misconduct claim. Doc. 8-1, at 29.

Cir. 2023). Even if the Ohio court of appeals misapplied a procedural bar, and this Court reviews Bard's claim de novo, it fails on the merits.

When reviewing a claim of prosecutorial misconduct, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The reviewing court's focus in a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor."[9] *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Here, the trial court gave a curative instruction after Rajcan's statement,[10] and "juries are presumed to follow the court's instructions." *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *see also United States v. Younger*, 398 F.3d 1179, 1192 (9th Cir. 2005) (the court's "attentiveness and swift corrective action" by cutting off the speaker and giving a curative instruction prevented the improper comments "from materially affecting the verdict").

---

[9]     Nevertheless, the Sixth Circuit has found that a "prosecutor does not commit misconduct by asking questions that elicit inadmissible evidence." *Key v. Rapelje*, 634 F. App'x 141, 148 (6th Cir. 2015) (citing *Wade v. White*, 120 F. App'x 591, 594 (6th Cir. 2005)). Here, Rajcan made his comment in response to the prosecutor's question. Doc. 9-1, at 284.

[10]     Immediately after Rajcan's comment, the trial court told the jury to disregard it. Doc. 9-1, at 285. Later, the judge offered to give the jury another instruction, but defense counsel declined because he didn't want to draw attention to the issue. *Id*. at 349.

Bard doesn't explain why Rajcan's statement about a second-degree felony—or any mention of a second-degree felony—rendered his trial unfair. It is not this Court's job "to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F.App'x 579, 580 (6th Cir. 2001)). So Bard has hasn't shown that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. To the extent that the Court considers this portion of ground eight on the merits, it fails.

### Ground ten is procedurally defaulted

In ground ten, Bard argues that trial counsel was ineffective for failing to strike a biased juror. Doc. 1, at 35. Although Bard raised this claim on direct appeal to the Ohio court of appeals, Doc. 8-1, at 40, he didn't raise it in his brief in support of jurisdiction to the Ohio Supreme Court, *id*. at 100–17. So ground ten is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court for discretionary review or it is procedurally defaulted); *Williams*, 460 F.3d at 806 (a petitioner must raise a claim in state court "and pursue that claim through the state's 'ordinary appellate review procedures'"). As above, Bard hasn't shown cause to excuse this procedural default or actual innocence.

**Conclusion**

For the reasons set forth above, I recommend that Bard's Petition be dismissed.

Dated: May 8, 2024

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).